1997 ME 209

**STATE of Maine**

**v.**

**Delia YORK.**

Supreme Judicial Court of Maine.

Argued Oct. 9, 1997.

Decided Oct. 30, 1997.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty. (orally), Bangor, for the State.

C. Peter Bos (orally), Gray & Palmer, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD and RUDMAN, JJ.

CLIFFORD, Justice.

[¶ 1] Delia York appeals from a judgment entered in the Superior Court (Penobscot County, *Kravchuk, J.*) affirming a judgment entered in the District Court (Bangor, *Hjelm, J.*) following her conviction of failure to appear as a State witness (Class E) in violation of 15 M.R.S.A. § 1313 (1980 & Supp.1996).[1] York contends that section 1313 violates her constitutional rights to due process and equal protection,[2] and that the State failed to meet its burden of proof pursuant to the corpus delicti rule. Finding no error, we affirm the judgment.

[¶ 2] On May 24, 1996, York was served a subpoena to appear and testify in the case of *State v. Sechrest.* Sechrest was charged with assault and criminal mischief; York was named as the victim. The case was scheduled for trial at 8:30 a.m. on May 30, 1996, but was not called until 9:00 or 9:15 a.m. York was not present at the trial. Officer Scott Webber of the Hampden Police Department looked for York in the waiting area outside the courtroom and the parking lot, but did not find her. The charges against Sechrest were dismissed.

[¶ 3] About a week later, York telephoned the Hampden Police Department regarding an unrelated case and spoke to Officer Webber.[3] When asked why she did not appear at the trial, York initially said that she believed the trial was not proceeding because Sechrest had left the State. Webber explained that Sechrest was, in fact, present at the trial. York then told Webber that she had informed the District Attorney's office that she did not want to proceed with the case, and that she had gone to work that day rather than appearing at the trial. York was charged with a violation of 15 M.R.S.A. § 1313.

[¶ 4] At York's trial, the State presented the testimony of Officers Webber and Jipson (who served the subpoena on York), and then rested. York moved for a judgment of acquittal, on the ground that the State had not met its burden of proof. The trial court denied the motion and found York guilty. This appeal followed York's unsuccessful appeal to the Superior Court.

[¶ 5] To have standing to challenge the constitutionality of a statute, a party must actually be deprived of a constitutional right by the operation of the statute. *Brann v. State*, 424 A.2d 699, 702 (Me.1981). As a general rule, a litigant may not assert the constitutional rights of third parties. *Common Cause v. State*, 455 A.2d 1, 6 (Me. 1983).

[¶ 6] York contends that the stigma and punishment of a conviction under section 1313 provide her with sufficient standing to

---

1. Section 1313 provides:
 **§ 1313. Punishment of state witness for nonattendance**
 Whoever, having been subpoenaed as a witness in behalf of the State before any court or grand jury, without reasonable cause fails to appear at the time and place designated in the subpoena, if he is not punished therefor as for contempt, is guilty of a Class E crime.
 15 M.R.S.A. § 1313 (1980 & Supp.1996).

2. ME. CONST. art I, § 6–A; U.S. CONST. amend. XIV.

3. York objected to Officer Webber's testimony concerning her statements to him, on the ground that York's admissions should not be admitted in

evidence prior to the State proving the commission of a crime. *See State v. Curlew*, 459 A.2d 160, 163–64 (Me.1983) (pursuant to order-of-proof or procedural requirement of the corpus delicti rule, better practice is to require proof of the corpus delicti before admitting confession or admission in evidence). The court acted within its discretion in admitting evidence of York's admissions. York also preserved her contention that the State had not satisfied the substantive aspect of the corpus delicti rule, *id.* at 164–65, by moving for a judgment of acquittal at the close of the evidence. *State v. Libby*, 546 A.2d 444, 451 (Me.1988).

challenge its constitutionality. Substantively she argues that the statute is unconstitutional because "it provides the State with [a tool for compelling the attendance of witnesses] while depriving a Defendant the same tool." York's constitutional argument, however, is an improper attempt to assert the constitutional rights of third parties not involved in this action. *See Common Cause v. State*, 455 A.2d at 6–7 (plaintiffs lack standing to assert equal protection rights of third parties not involved in the suit). York herself did not invoke compulsory process in her defense. The Superior Court correctly concluded that York "lacks standing to make this challenge because her own right to compulsory process was not involved in her failure to obey a subpoena to appear for the trial of [Sechrest]."

[¶ 7] York also contends that lack of reasonable cause is an element of the crime of failure to appear as a State witness, 15 M.R.S.A. § 1313, and the State's failure to produce extrinsic evidence, apart from her admissions, that she lacked reasonable cause prevented it from meeting its burden under the corpus delicti rule. We disagree.

[¶ 8] York may be convicted of failure to appear as a witness in behalf of the State only if each element of the crime is proved beyond a reasonable doubt. 17–A M.R.S.A. § 32 (1983). York's motion for a judgment of acquittal triggers a two-part analysis of the State's substantive burden of proving the corpus delicti. *State v. Curlew*, 459 A.2d 160, 164 (Me.1983). First, the State must "produce, exclusive of any confession or admission of the defendant, such credible evidence as will create a substantial belief that the crime charged has been committed by some person." *Id.* at 165. Second, the whole record, including any confessions or

admissions made by the defendant, must contain sufficient evidence to establish the corpus delicti beyond a reasonable doubt. *Id.* at 164. It is the State's burden under the first part of the analysis that York contends was not met. York does not dispute that there is sufficient evidence on the entire record, including her admissions, to establish the corpus delicti; instead, York argues that exclusive of her admissions to Officer Webber, the State failed completely in what she contends is the State's burden to demonstrate that she lacked reasonable cause to fail to appear pursuant to the subpoena. The State, however, meets York's argument by relying on 17–A M.R.S.A. § 101(1) (1983 & Supp. 1996) to contend that the State was not required to present proof that York lacked reasonable cause for her nonattendance. We agree with the State.

[¶ 9] A person violates 15 M.R.S.A. § 1313 if that person, having been subpoenaed as a witness in behalf of the State, fails to appear without reasonable cause. Pursuant to 17–A M.R.S.A. § 101(1),[4] however, the State is not required to disprove facts constituting an "exception, exclusion or authorization which is set out in the statute defining the crime by proof at trial[.]"[5] There is no statutory provision or legislative history defining the term 'exception, exclusion, or authorization' used in section 101(1). In construing a statutory term that is undefined in the statute, the plain meaning of the term controls. *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 533 (Me.1996). Webster's Third New International Dictionary defines "authorize" as "to endow with authority or effective legal power, warrant, or right." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 146 (1981).

---

4. Section 101(1) provides:
 *The State is not required to negate* any facts expressly designated as a *"defense,"* or *any exception, exclusion or authorization which is set out in the statute defining the crime by proof at trial*, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue, in which case the State must prove its existence beyond a reasonable doubt. 17–A M.R.S.A. § 101(1) (1983 & Supp. 1996) (emphasis added).

5. If the existence of the exception, exclusion, or authorization is placed in issue by evidence admitted at trial sufficient to create a reasonable doubt on the issue, then the State must disprove the exception, exclusion, or authorization beyond a reasonable doubt. 17–A M.R.S.A. § 101(1). This burden-shifting aspect of section 101(1) does not apply to this case, as no evidence was admitted that would generate a reasonable doubt as to whether York had reasonable cause for her failure to appear.

Pursuant to section 1313, a witness subpoenaed by the State is authorized to resist the subpoena only if the witness has reasonable cause. Because "without reasonable cause" is an authorization within the meaning of section 101, pursuant to section 101 the State was not required to prove that York lacked reasonable cause.[6]

■ [¶ 10] Apart from York's admissions to Officer Webber, the State offered the following evidence: A subpoena, issued on application of the State, was served on York on May 24, 1996 by Officer Jipson. The subpoena commanded York to appear and testify at the trial of Sechrest at 8:30 a.m. on May 30, 1996. The case was called to trial between 9:00 and 9:15 a.m. on May 30, 1996. York was not present in the courtroom, nor could she be located in the waiting area outside the courtroom or in the parking lot. This evidence was sufficient to create a substantial belief that York was served with a subpoena issued by the State and that she failed to appear in response to the subpoena. The trial court correctly rejected York's corpus delicti argument.

The entry is:

Judgment affirmed.

---

**6.** York argues that the reasonable cause provision of section 1313 is not an exception, exclusion, or authorization. Under York's reading of the statute, the State would be relieved of its burden only with respect to expressly designated exceptions, exclusions, or authorizations.

 Section 101 provides that "[t]he State is not required to negate any facts expressly designated as a 'defense,' or any exception, exclusion or authorization which is set out in the statute defining the crime by proof at trial...." 17-A M.R.S.A. § 101(1). The initial independent clause, requiring the defense to be expressly designated, is separated by a comma from the dependent clause providing that the State is not required to negate "any exception, exclusion, or authorization" which is set out in the statute. *Id.* The punctuation and grammatical structure of section 1313 dictate that the expressly designated requirement applies to facts denominated a 'defense,' and not to exceptions, exclusions or authorizations. *Cf. Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979) ("A comma is generally used to indicate the separation of words, phrases, or clauses from others not closely connected in the structure of the sentence.").